# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:19-cv-157-KDB
### (5:18-cr-16-KDB-DSC-1)

| | | |
|---|---|---|
| **TEDDI RENEE STAMEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's pro se Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and the Government's Motion to Dismiss,

(Doc. No. 3).

## I.    BACKGROUND

Petitioner was indicted for: Count (1), methamphetamine trafficking conspiracy involving

500 grams or more of a mixture containing a detectable amount of methamphetamine; and Count

(2), possession with intent to distribute 50 grams or more of a mixture and substance containing a

detectable amount of methamphetamine. (5:18-cr-16 ("CR"), Doc. No. 1).

The parties entered into a written Plea Agreement that is signed by the prosecutor, defense

counsel, and Petitioner. (CR Doc. No. 11). The Plea Agreement provides that Petitioner was

pleading guilty to Count (1) and admitted to being in fact guilty as charged in Count (1). (CR Doc.

No. 11 at 1). The Agreement provides that Petitioner's sentencing exposure is a minimum term of

10 years' imprisonment and a maximum term of life, a $20,000,000 fine, or both, and no less than

10 years of supervised release. (CR Doc. No. 11 at 2). The parties agreed to jointly recommend

that the Court find under the U.S. Sentencing Guidelines that "**[t]he amount of a mixture and**

1

**substance of methamphetamine that was known or reasonably foreseeable by the defendant was in excess of 1,500 grams but less than 5,000 grams….**" (CR Doc. No. 11 at 2) (emphasis added). The United States agreed that the plea is timely for purposes of § 3E1.1(b), if applicable. (Id.). The parties agreed that either party may argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, adjustments, and departures and variances from the applicable guideline range. (CR Doc. No. 11 at 2-3). The Plea Agreement sets forth the consequences of the guilty plea and the rights Petitioner was waiving by pleading guilty including her express waiver of his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 11 at 3-5). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis for the plea and that she read and understood the Factual Basis filed with the Plea Agreement, and that it can be used by the Court, U.S. Probation Office, and the United States unless the Factual Basis itself notes that Petitioner's right to object to a particular fact was explicitly reserved. (CR Doc. No. 11 at 4).

The written Factual Basis is signed by defense counsel, who certified that he read and discussed with Petitioner and was satisfied that Petitioner understood it, and which Petitioner did not dispute. (CR Doc. No. 10 at 2). The Factual Basis provides:

1. From in or about 2016 until on or about January 11, 2018, … Defendant Teddy Renee STAMEY, was a member of a conspiracy to distribute and to possess with intent to distribute 500 grams or more of methamphetamine.
2. On 1/11/2018, law enforcement interviewed Defendant STAMEY and co-conspirator Nelson GRUBB.  STAMEY acknowledged that GRUBB was picking up methamphetamine in Asheville. Later that day, a co-conspirator provided a non-custodial interview in which he stated that GRUBB had brought him methamphetamine the night before and that GRUBB was going to Asheville that day to pick up more methamphetamine from his source. Surveillance units observed GRUBB and STAMEY as they traveled to

2

Asheville and picked up methamphetamine. Law enforcement stopped GRUBB and STAMEY in Caldwell County and seized 10 ounces of methamphetamine.

3. Law enforcement obtained an audio recorded post-Miranda confession from STAMEY, who admitted picking up methamphetamine 5 times with GRUBB and that GRUBB was getting pound quantities. STAMEY also admitted to packaging methamphetamine for re-sale at GRUBB's direction.

4. On 9/15/2017, a co-conspirator was interviewed by law enforcement and admitted to distributing methamphetamine for GRUBB and STAMEY, selling 1 to 2 ounces at a time.

(CR Doc. No. 11 at 1-2).

A Rule 11 hearing came before Magistrate Judge David S. Cayer on July 5, 2018. Petitioner stated under oath that she understood the charges against her and the consequences of the plea including the maximum and minimum penalties she faced if convicted. (CR Doc. No. 25 at 3-4). Petitioner confirmed that she spoke to counsel about how the U.S. Sentencing Guidelines may apply to her case, that the sentence has not yet been determined and the guidelines have not yet been calculated, and that she may receive a sentenced higher or lower than called for by the guidelines. (CR Doc. No. 25 at 4-5). Petitioner acknowledged the rights she was waiving by pleading guilty including the right to be represented by a lawyer, the presumption of innocence, the right to not testify at trial, and the Government's burden of proof. (CR Doc. No. 25 at 6). Petitioner admitted her guilt of the offense charged in Count (1). (Id.). The prosecutor summarized the terms of the Plea Agreement in open court including that the amount of methamphetamine reasonably foreseeable to Petitioner in Count (1) was more than 1,500 grams but less than 5,000 grams, and the appellate and post-conviction waivers. (CR Doc. No. 25 at 7-10). Petitioner stated that she understood the Plea Agreement, signed it, and agreed with its terms including the appellate and post-conviction waiver. (CR Doc. No. 25 at 12). Petitioner confirmed that she was pleading guilty without any threats, intimidation, or promises other than the terms of the plea agreement. (CR Doc. No. 25 at 13). Petitioner further stated that she read and understood the Factual Basis

3

and agreed with it.  (Id.). Petitioner stated that she had enough time to discuss with her lawyer any possible defense she may have to the charge and that she was satisfied with the services of her attorney. (Id.). Counsel stated that he reviewed each of the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood them. (CR Doc. No. 25 at 14).

The Presentence Investigation Report ("PSR") scored the base offense level as 32 because the offense involved at least 1.5 kilograms but less than 5 kilograms of methamphetamine. (CR Doc. No. 17 at ¶ 15). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. (CR Doc. No. 17 at ¶ 24). Petitioner had four criminal history points and a criminal history category of III. (CR Doc. No. 17 at ¶¶ 39-40).  The resulting guidelines range was 108 to 135 months' imprisonment, however, the statutory minimum sentence is 10 years' imprisonment, so the guideline range is 120 to 135 months' imprisonment, followed by five years of supervised release (CR Doc. No. 17 at ¶¶ 62, 65). No objections to the PSR were filed.

The sentencing hearing came before Judge Richard L. Voorhees on December 3, 2018. Petitioner confirmed that she was pleading guilty freely and voluntarily will full knowledge of the nature of the charge and the possible penalties, and that she was guilty of the offense. (CR Doc. No. 24 at 2-3).  The Court adopted the PSR without change. (CR Doc. No. 24 at 4). The Government moved for a downward departure and Petitioner expressed her remorse. (CR Doc. No. 24 at 4-8).  The Court granted a three-level downward departure to level 26, which resulted in a guideline range of 78 to 97 months' imprisonment. (CR Doc. No. 24 at 12). It sentenced Petitioner to the bottom of that reduced range to 78 months' imprisonment followed by five years of supervised release for Count (1) and it dismissed Count (2) on the Government's motion. (CR Doc. No. 24 at 13-14). The Judgment was entered on December 7, 2018. (CR Doc. No. 20). Petitioner did not appeal.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on November 17, 2019.[1] She argues that counsel was ineffective for failing to challenge the drug quantity in the Plea Agreement because she never saw any evidence supporting the 1,500 to 5,000 gram quantity and that she was "bullied" into saying, on the night of her arrest, that she had made four or five trips with Grubbs whereas she stated during her interview that she had no knowledge of quantities. Assuming that Grubbs possessed 280 grams on the night of the arrest, four or five times that amount is only 1,400 grams and Petitioner never personally possessed any of the drug. Petitioner further alleges that counsel did not contact her for months then rushed her to sign a plea after being told that the prosecutor was going to increase the minimum mandatory term of imprisonment from 10 years to 20 years. (Doc. No. 1 at 4). Petitioner asks the Court to vacate her sentence and resentence her. (Doc. No. 1 at 12).

The Government has filed a Motion to Dismiss, (Doc. No. 3), arguing that Petitioner waived her pre-plea allegations of ineffective assistance of counsel by pleading guilty; her allegations contradict her sworn statements before the Court; and she has not shown deficient performance or prejudice.

On June 17, 2020, the Court informed Petitioner of her right to respond to the Government's Motion to Dismiss, gave her 30 days to do so, and cautioned her that the failure to file a timely and persuasive response may result in the dismissal of her § 2255 Motion to Vacate. (Doc. No. 4). Petitioner failed to file a Response and the time to do so has now expired.

## II.    LEGAL STANDARD

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 ("[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing….").

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court has also determined that no response by the Government is required.

**III.    DISCUSSION**

**(A) Waiver**

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit

6

does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

In the instant case, Magistrate Judge Cayer conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including the appellate and post-conviction waivers. Petitioner stated that she was pleading guilty because she was guilty of Count (1), and that she had fully discussed any possible defenses with counsel, was satisfied with counsel's services.

The record reveals that the guilty plea was knowingly and voluntarily entered with full knowledge of all its consequences.

### (B) Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell

7

below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688.

A reviewing court "must apply a 'strong presumption' that counsel's representation was within

the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104

(2011) (quoting Strickland, 466 U.S. at 689).

The right to the assistance of counsel during criminal proceedings extends to the plea-

bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are

"entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper,

566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d

356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the

voluntariness of the plea depends on whether counsel's advice was "within the range of

competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985)

(quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice

prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59;

Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner's present self-serving contentions that counsel failed to adequately investigate

the drug quantity and that the quantity contained in the PSR is incorrect are conclusively refuted

by the record and were waived by her knowing and voluntary guilty plea. The Plea Agreement and

Factual Proffer state that the applicable amount is between 1,500 and 5,000 grams of

methamphetamine. Petitioner agreed to this drug amount under oath at the Rule 11 hearing and the

PSR calculated the offense level in accordance with the Plea Agreement. Petitioner's admissions

about the drug amount attributable to her relieved the Government of its obligation to prove these

facts, and of counsel's obligation to investigate them. See Section (1), *infra.* Petitioner's attempts

8

to disavow these facts and blame counsel for miscalculating the drug amount are refuted by her own sworn admissions and will be rejected. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). Counsel cannot be deemed ineffective for failing to investigate or object to a drug quantity to which Petitioner specifically admitted in the written Plea Agreement and under oath in open court. Moreover, counsel was not ineffective for failing to argue that Petitioner never personally possessed the drugs because she admitted she was guilty of conspiracy and that the 1,500 to 5,000-gram drug amount was reasonably foreseeable to her, so that argument would have been legally frivolous. See generally Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) (a defendant is not prejudiced by counsel's failure to make a meritless objection).

Petitioner's contention that counsel pressured her to accept the plea is likewise conclusively refuted by the record. Petitioner stated, under oath, that she is guilty of the offense, that she discussed any possible defenses with counsel, that she was satisfied with counsel's services, and that she was pleading guilty freely and voluntarily without any threats or intimidation. See Section (1), *supra*. Her present self-serving contentions to the contrary will be rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221.

Moreover, Petitioner has failed to demonstrate prejudice. She only seeks sentencing relief and does not seek to withdraw her guilty plea. Therefore, she has failed to satisfy Strickland's prejudice prong by showing that there is a reasonable probability that she would not have pleaded

guilty but for counsel's alleged ineffective assistance.  Moreover, there is no reasonable probability

that she would have received a lower sentence had counsel raised any of her frivolous sentencing

claims.

Petitioner's claims of ineffective assistance of counsel were waived by her knowing and

voluntary guilty plea and are conclusively refuted by the record. Therefore, the Government's

Motion to Dismiss will be granted and Petitioner's § 2255 Motion to Vacate will be dismissed and

denied.

**IV.     CONCLUSION**

For the foregoing reasons, Respondent's Motion to Dismiss is granted and Petitioner's §

2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1.        Respondent's Motion to Dismiss, (Doc. No. 3), is **GRANTED**.

2.        Petitioner's pro se § 2255 Motion to Vacate, (Doc. No. 1), is **DISMISSED** and

**DENIED**.

2.        Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255

Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2);

Miller-El v. Cockrell, 537 U.S. 322, 338  (2003) (in order to satisfy § 2253(c), a petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000)

(when relief is denied on procedural grounds, a petitioner must establish both that the

dispositive procedural ruling is debatable and that the petition states a debatable claim of

the denial of a constitutional right).

3.        The Clerk is instructed to close this case.

10

Signed: August 14, 2020

Kenneth D. Bell
United States District Judge

11